### Simpson v. The State.

No error was committed on the trial ; there is no merit in the ground
of newly discovered evidence ; the verdict was right, and the court
properly refused to grant a new trial.          *Judgment affirmed.*
November 20, 1893.

Accusation of misdemeanor.    Before Judge West-
moreland.    Criminal court of Atlanta.    September
term, 1893.

Simpson was charged with selling liquor to J. I. Clay, who was intoxicated or drunk at the time. After verdict of guilty, the defendant's motion for a new trial was overruled. The grounds of the motion are:

. The court charged: "If, after you have considered the evidence in the case fairly and impartially with a desire to arrive at the truth, you believe beyond a reasonable doubt, as I have explained to you, that this man is guilty, you are authorized to convict him." The error specified is, that the court failed to couple the prisoner's statement with the evidence, in this instruction.

The court charged: "A juror cannot raise a doubt in his own mind and then acquit on it." Error, because " each juror should decide for himself upon his oath as to what the verdict should be, and should not be hampered with the charge of the court."

During the argument of the State's solicitor he called the court's attention to the distinction between the terms "intoxicated" and " drunk," and evoked from the court this statement in the presence of the jury : " There is, I think, a distinction between the terms 'intoxicated' or 'drunk'." Thereupon defendant's counsel made a written request of the court to give the following instructions to the jury, and the refusal to do so is assigned as error: " I charge you that there is no distinction between the terms, 'intoxicated' or 'drunk.' Neither term means that a man must be down and unable to walk, but if his conduct is such that a man whose duty it is to know whether or not a man is intoxicated or drunk, and this he must ascertain by the exercise of ordinary diligence. (Define the term of 'ordinary diligence.') You must look to the circumstances and ascertain for yourselves as to whether or not Clay was intoxicated or drunk. You can look at the circumstances of no arrest on the occasion testified about. You can look at the circumstances that no witnesses were introduced except the kinfolks of Clay."

Verdict unsupported by the evidence; and newly discovered testimony. The evidence at the trial consisted of the testimony of Clay's wife, and his brother and sister. From this it appears that on two occasions within the past two years he bought liquor from the defendant, and was drunk at the time he bought it. On the first occasion he staggered as he went into and when he came out of defendant's bar-room; and after he came out, his wife, who was waiting for him, prevailed on him to give the bottle to her, which she carried back to the counter and delivered to the defendant with the admonition not to sell her husband any more whisky. The defendant gave her the money which he had received for the liquor, and she took her husband home. On the way he stopped at a store and cursed the store-keeper without apparent cause. His wife soon afterwards got him upon a street-car which took them to their home, where he lay across the bed and could not be got up until the next morning. His wife testified that she did not remember seeing or meeting any policemen after leaving the bar-room, and that her husband was not arrested or in any way interfered with. Clay's sister testified that when he is drinking he is very wild, and when he is drunk he is like a dead man. His brother testified that Mrs. Clay sent him to watch her husband in last June, to find out, if possible, where he got his liquor. Witness watched him for more than three hours; he was in and about a wagon-yard opposite defendant's place of business, and while in this yard witness saw him break an empty flask and then take his money and scatter it on the ground. Between seven and eight o'clock that evening witness saw him cross the street and enter the defendant's bar-room, which was crowded with negroes, and soon afterwards saw him walk up to the counter and receive from the defendant a half-pint flask of white liquor, which he put into his

pocket and went out. Part of the time he walked straight, and part he would stagger. He was drunk. Witness saw no more of him until he came home the next morning about four o'clock. The occurrences related took place near the station-house on Decatur street, "recognized as a pretty tough street." Witness saw policemen, but did not ask Clay to go home with him or threaten to have him arrested if he did not, and said nothing to defendant about it. When Clay is drinking he is pretty wild and talkative, and anybody can tell he is intoxicated or drunk. The defendant stated: "I have been in the whisky business four or five years, and this is the first time I have ever had a case made against me. I try not to violate the law if I know it, and I do not recollect ever selling any whisky to J. I. Clay when he was intoxicated or drunk." The newly discovered testimony is contained in an affidavit of Clay, that he has never been arrested for being drunk but twice, on the first of which occasions he was fined by the city recorder for drunkenness and disorderly conduct, and on the latter was acquitted; "that he always drinks more or less, but when he feels his whisky no one not intimately acquainted with him can tell that he has been drinking, and in that particular he is not unlike a great many other men"; that "in the past three years he has bought and paid for a home now worth $1,100 by his own labor the sum of $500 except $75, and supported himself, wife and two children; that he has been married twelve years, and has never stayed away from home but two nights during that time; and that he never said anything about these facts to the defendant or to his attorney until after the conviction. Accompanying this were affidavits, one by M. J. Prisock, that he is acquainted with Clay and knows him to be a man of good character and worthy of belief; and one each by the defendant and his counsel, that they did not

know of the evidence contained in Clay's affidavit until after the trial, and that their failure to discover the same before the trial was by no lack of diligence on their part. This showing was met by a counter-showing on the part of the State, to the effect that Clay was under the influence of liquor when he made the above affidavit and did not understand what he was swearing to, and that the statements made therein are not correct in fact. Three affidavits were produced in rebuttal of the counter-showing, to the effect that if Clay was under the influence of whisky when he made the affidavits, the affiants did not detect it, but his speech and behavior were such as to impress a witness to the contrary.

R. J. JORDAN, for plaintiff in error.

LEWIS W. THOMAS, solicitor, contra.